UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS COMMERCIAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFER L ANCONA,<br><br>Defendant. | Case No. 14-cv-04379-RS<br><br>**ORDER ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS** |

## I. INTRODUCTION

In this insurance coverage dispute, plaintiff Travelers Commercial Insurance Company ("Travelers") seeks a declaratory judgment that it had no duty to defend or indemnify its policyholder Jeffrey Williams in connection with state court litigation brought by his former romantic partner, Jennifer Ancona. In the underlying litigation, Ancona alleged that Williams had negligently infected her with two sexually transmitted diseases and further caused her to fear that she had been exposed to additional diseases, including HIV. After Travelers declined to defend the lawsuit, Williams assigned his rights against the insurance company to Ancona and agreed that he would not contest liability. With both Williams and Travelers absent from the proceedings, a bench trial was held and Ancona prevailed on two of her claims.

Travelers then sued Ancona in this court and the parties filed cross motions for judgment on the pleadings. According to Ancona, the trial court's findings of fact in the underlying action conclusively establish that Travelers had a duty to defend and indemnify Williams. Travelers responds that Williams was not covered for injuries arising out of his intentional conduct. Because Williams' conduct did not amount to an "accident" under California law, his insurer had no duty to defend or indemnify him in connection with the underlying action. Judgment on the

pleadings must therefore be entered in favor of Travelers.

## II. BACKGROUND

In November 2012, Ancona sued Williams in Alameda County Superior Court. Several months later, she filed her first amended complaint ("FAC").[1] According to the FAC's allegations, Ancona and Williams entered into a romantic relationship in September 2010. Soon after they began dating, Williams asked Ancona to have unprotected sexual intercourse with him. Before agreeing, Ancona told Williams to undergo testing for sexually transmitted diseases ("STDs"). Williams agreed to be tested and subsequently represented to Ancona that he was free of STDs.

The couple then engaged in unprotected sex. Soon after, Ancona began experiencing strange symptoms. She underwent testing and discovered that she was infected with the herpes simplex virus and the human papillomavirus ("HPV"). Alleging that Williams had transmitted the diseases to Ancona, the FAC asserted six causes of action, including sexual battery, fraud, and intentional infliction of emotional distress. The FAC's sixth and final claim was for negligent infliction of emotional distress ("NIED"). In support of that claim, the FAC averred Ancona had suffered severe emotional distress due to her contraction of herpes and HPV "and also due to the fear" that Williams had exposed Ancona "to additional diseases, including but not limited to HIV/AIDS and Hepatitis . . . with malice, oppression, fraud, and/or a conscious disregard for" her safety.

At the time, Williams had homeowners insurance under a policy issued by Travelers. Upon service of Ancona's initial complaint, Williams contacted Travelers to tender defense and indemnity. Travelers denied coverage and declined to defend against Ancona's claims. Williams later provided Travelers with the FAC and again requested defense and indemnity. The insurance

---

[1] Because they are undisputed matters of public record, judicial notice may be taken of the contents of Ancona's complaints and the superior court's findings of fact and judgment in the underlying litigation. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). Judicial notice of other documents submitted by the parties is unnecessary to the disposition of this action and is therefore denied.

company again denied coverage and refused to contest the lawsuit on Williams' behalf. On April 23, 2014, Williams and Ancona entered into a settlement agreement pursuant to which Ancona promised not to enforce any judgment in the underlying action against Williams. In exchange, Williams assigned to Ancona any claims he might have against Travelers.

The superior court held a bench trial to resolve the underlying action on June 10, 2014. Neither Williams nor Travelers appeared. After considering the evidence submitted by Ancona, the court issued findings of fact and conclusions of law. In the findings and accompanying judgment, the court held Williams liable for negligence and NIED and awarded damages of approximately $763,000 (including punitive damages of $100,000 and attorneys' fees and costs). The superior court found Williams liable for negligence because he had transmitted herpes and HPV to Ancona.[2] Regarding the NIED claim, the superior court found (in relevant part):

> 12. In August 2012, Plaintiff was still in a romantic relationship with Defendant and reasonably believed and expected that Defendant was monogamous, and only having sexual relations with Plaintiff.
>
> 13. In the months leading up to August 2012, Defendant was having unprotected sexual intercourse with women other than Plaintiff, thus negligently exposing Plaintiff to the risk of contracting HIV, AIDS, hepatitis, or other serious and life-threatening diseases.
>
> 14. By not telling Plaintiff that he was having unprotected sex with other women, Defendant acted with conscious disregard of Plaintiff's safety. . . .
>
> 17. Defendant's conduct was a substantial factor in causing Plaintiff's serious emotional distress. While Defendant acted with negligence and conscious disregard for Plaintiff's safety, Defendant did not subjectively or objectively intend or expect that his conduct would result in any harm to Plaintiff. Plaintiff's fear and attendant emotional distress only occurred after Plaintiff found Defendant's notebook, which Defendant had accidentally left lying open in his home, and which made reference to his romantic feelings for other women.
>
> 18. Plaintiff did not actually contract HIV, AIDS, hepatitis, or other serious and life-threatening diseases in 2012. The severe emotional distress

---

[2] Recognizing that Williams' policy excludes coverage for injuries "arising out of the transmission of a communicable disease," Ancona does not seek to hold Travelers liable in this action for the damages she suffered as a result of her contraction of herpes and HPV. Instead, she seeks a finding that Travelers had a duty to defend and indemnify Williams in connection with her NIED claim, which arose only from *fear*—not "transmission"—of HIV.

caused by her fear of developing these diseases did not arise out of her prior contraction of HSV II and HPV from Defendant and would have occurred even if Plaintiff had never contracted HSV II and HPV from Defendant.

Upon learning of the disposition of the underlying action, Travelers filed a complaint against Ancona in this court seeking a declaratory judgment that it had no duty to defend or indemnify Williams. After answering the complaint, raising several affirmative defenses, and asserting several counterclaims, Ancona moved for judgment on the pleadings. Travelers then filed a cross motion for judgment on the pleadings.

## III.  LEGAL STANDARD

Because Ancona is a California resident and the parties' dispute relates to an insurance policy covering property located in the state, California substantive law applies in this diversity action. *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 534 (9th Cir. 2001). "Judgment on the pleadings is properly granted when there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). While "affirmative defenses usually preclude judgment on the pleadings," judgment on the pleadings may nonetheless be granted when a defendant's affirmative defenses do not "contain sufficient factual matter to state a defense that is plausible on its face." *Westport Ins. Corp. v. Northern Cal. Relief*, --F.Supp.3d--, 2014 WL 7185480, at *9 (N.D. Cal. Dec. 16, 2014).

## IV.  DISCUSSION

A. <u>Duty to Indemnify</u>

1. *Underlying Judgment*

As a threshold matter, the parties disagree on the bearing the superior court's findings of fact in the underlying action should have on these proceedings. "An insurer that has been notified of an action and refuses to defend on the ground that the alleged claim is not within the policy coverage is bound by a judgment in the action, in the absence of fraud or collusion, as to all material findings of fact essential to the judgment of liability of the insured." *Geddes & Smith, Inc. v. St. Paul-Mercury Indem. Co,* 51 Cal. 2d 558, 561 (1959). To be enforceable against an insurer, a judgment need not be based on a contested or adversarial trial, but may rest upon "an

uncontested trial where the insured settled with the claimant and thereafter presented no defense." *Executive Risk Indem., Inc. v. Jones*, 171 Cal. App. 4th 319, 330-31 (2009).  Pursuant to these longstanding principles, Travelers is bound by the findings and judgment entered by the superior court in the underlying action.

Travelers nevertheless encourages this court to disregard or discount various "immaterial" findings of fact entered by the superior court.  This argument rests on a hazy theory of collateral estoppel endorsed, ostensibly, by two California decisions.  The first, *Geddes*, offers little support for Travelers' position.  While the California Supreme Court in *Geddes* did indicate that an insurer may only be bound by "*material* findings of fact *essential* to the judgment of liability of the insured," it provided no guidance as to how a court presiding over a subsequent coverage dispute might go about choosing which adjudicative facts to honor and which to ignore.  51 Cal. 2d at 561 (emphasis added).  Moreover, if *Geddes* indeed encouraged courts in coverage cases to reject explicit findings of fact entered in underlying liability actions, that invitation appears to have gone almost entirely unheeded over the half century since the case was decided.

The second case relied upon by Travelers, *Schaefer/Karpf Productions v. CNA Ins. Co.*, 64 Cal. App. 4th 1306, 1313 (1998), is only moderately more helpful.  Like the instant case, *Schaefer* involved a coverage dispute focused on the language of an underlying judgment resolving litigation in which the insurer had not participated.  The question presented to the California court of appeal was whether the underlying judgment, which included a finding of liability based on "injury to property," estopped the carrier from arguing that no covered property damage had occurred under the terms of its policy.  *Id.* at 1313-14.  After reviewing the trial court record, the court of appeal concluded that the injured party "may have suffered property damage for purposes of establishing liability, but whether that property damage" was covered under the policy "was not decided in the underlying action."  *Id.* at 1314.

Likewise, the superior court in this case did not decide any questions of insurance coverage; it was asked only to determine whether Williams was liable to Ancona.  As a result, Travelers is not precluded from litigating coverage issues and may "present any defenses not

inconsistent with the judgment against the insured." *Geddes*, 51 Cal. 2d at 561-62.  For example, the fact that the underlying findings contain the word "accidentally" does not, of itself, conclusively demonstrate that Ancona's injuries arose out of an "accident" as that term is used in the policy.  That said, neither *Geddes* nor *Schaefer* invests this court with authority to ignore a superior court's express findings of fact.[3]  The question of whether Travelers had a duty to indemnify Williams must be answered by reference to the underlying findings and judgment, considered in their entirety.

2.     *Coverage for Accident*

Under his policy with Travelers, Williams was insured against defense costs and liability arising out of any covered "occurrence."   An "occurrence," in turn, was defined by the policy to include an "accident."   California courts have construed the term "accident," as it is commonly used in liability insurance policies, to mean "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause."  *Delgado v. Interinsurance Exch. of Auto Club of So. Cal.*, 47 Cal. 4th 302, 308 (2009).

Notably, under California law an "accident" refers "to the nature of the insured's conduct, not his state of mind."[4]  *Collin v. American Empire Ins. Co.*, 21 Cal. App. 4th 787, 811 (1994) (internal citations, quotation marks, and emphasis omitted).   Recently, the California Supreme Court provided further guidance by clarifying that an accident refers to the conduct "for which

---

[3] The language in *Geddes* was apparently derived from general principles of collateral estoppel. 51 Cal. 2d at 562 (citing Restatement (First) of Judgments § 107 (collecting collateral estoppel jurisprudence)); *see also Lucido v. Superior Court,* 51 Cal. 3d 335, 342 (1990) (issue preclusion generally does not apply in subsequent action where findings of fact at issue were "entirely unnecessary" to underlying judgment).  Travelers, however, makes no reference to broader rules of collateral estoppel.  In confining its argument to the two insurance decisions discussed above, Travelers has failed to demonstrate that this court is authorized to disregard express findings of fact entered by the Alameda County Superior Court.

[4] As a result, the superior court's finding that Williams "did not subjectively or objectively intend or expect that his conduct would result in any harm" to Ancona is largely immaterial to the question of whether an accident occurred.  *See Delgado*, 47 Cal. 4th at 306 ("a purposeful and intentional act remains purposeful and intentional regardless of the reason or motivation for the act").

liability is sought to be imposed on the insured." *Delgado*, 47 Cal. 4th at 311. Here, Williams' liability-producing conduct was decidedly not accidental.

To prevail on her NIED claim, Ancona was required to prove:

1. That she was exposed to HIV or AIDS as a result of Williams' negligent conduct;
2. That Williams acted with a conscious disregard of Ancona's rights or safety;
3. That Ancona suffered serious emotional distress from a fear that she would develop HIV or AIDS as a result of the exposure;
4. That a reliable medical or scientific opinion confirmed that Ancona's risk of developing HIV or AIDS was significantly increased by the exposure and resulted in an actual risk that was significant; and
5. That Williams' conduct was a substantial factor in causing Ancona's serious emotional distress. [*See* Judicial Council of Cal., Civil Jury Instructions No. 1623].

The superior court considered Williams' conduct in connection with the first and fifth elements of Ancona's NIED claim. It found the first element satisfied because Williams "was having unprotected sexual intercourse" with other women, thus negligently exposing Ancona to a risk of contracting HIV. Per the findings, Williams intended to have unprotected sex with multiple partners, intended to have contemporaneous unprotected sex with Ancona, and intentionally declined to disclose his activities to Ancona. Nothing in the chain of conduct leading to Ancona's exposure to HIV was inadvertent. With respect to the fifth and final element of the NIED claim, the superior court found that Williams' intentional sexual misconduct gave rise to a risk of HIV exposure and was therefore a substantial factor in producing Ancona's emotional distress. In sum, the conduct "for which liability [was] imposed on the insured" was wholly intentional. *Delgado*, 47 Cal. 4th at 311.

Ancona centers her argument to the contrary on a single sentence in the findings, where the superior court observed that Ancona's "fear and emotional distress only occurred after" she found a notebook which Williams had "accidentally left lying open in his home." Here, Ancona contends, is the requisite "accident." In support, Ancona points to the California Supreme Court's

statement that an accident exists where "*any* aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity." *Delgado*, 47 Cal. 4th at 315 (emphasis in original) (quoting *Merced Mutual Ins. Co. v. Mendez*, 213 Cal. App. 3d 41, 50 (1989)). This language, culled from a counterfactual originally developed by the California court of appeal in 1989, does nothing to tip the scales in Ancona's favor. She has not identified a single case applying the foregoing language to find an insured's conduct accidental under *any* set of facts,[5] let alone circumstances similar to those present here.[6]

The only analogous case identified by either party, *Commercial Union Assurance Company v. Oak Park Marina, Inc.*, 198 F.3d 55 (2d Cir. 1999), provides further support for the conclusion that Williams' conduct was no accident. In *Oak Park*, the insured surreptitiously videotaped individuals changing in locker rooms and then played the resulting footage for the amusement of bar patrons. *Id.* at 59. As in this case, the insured's liability in *Oak Park* arose out of conduct that was "indisputably" intentional—the only "accidental" link in the causal chain occurred when the injured parties learned of the insured's conduct. *Id.* at 60. Given these facts, the court of appeals had no difficulty concluding that the "unintended subsequent event"—the injured parties' discovery of the illicit videos—was insufficient "to make the resulting damage to plaintiffs 'accidental.'" *Id.* While *Oak Park* dealt with New York insurance law and is therefore not dispositive, its reasoning is germane and persuasive.

---

[5] In both *Delgado* and *Merced* (where the language at issue originated), the "any aspect" phrase was used to demonstrate the type of occurrence which, in contrast to the circumstances present in each of those cases, might constitute an accident for purposes of insurance law. *Delgado*, 47 Cal. 4th at 317 (no accident occurred); *Merced*, 213 Cal. App. 3d at 50 (conduct was not an accident and insurer had no duty to defend). Again, Ancona has not pointed to a single case in which a California court has actively relied on the language from *Merced* to find a chain of otherwise intentional conduct transformed into an accident.

[6] The *Delgado* court's discussion of the language from *Merced* must be read in the context of its earlier recognition that the term "accident" relates to the insured's liability-producing conduct. 47 Cal. 4th at 311. As the *Delgado* court further observed: "Any given event, including an injury, is always the result of many causes. For that reason, the law looks for purposes of causation analysis to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability." *Id.* (internal citations and quotation marks omitted).

ORDER ON CROSS MOTIONS FOR JUDGMENT ON THE PLEADINGS
CASE NO. 14-cv-04379-RS
8

Ancona's attempts to distinguish *Oak Park* are unavailing. Ancona argues that because Williams did not consider the couple to be monogamous, he had no idea that Ancona might react unfavorably to the revelation that he was having unprotected sex with other partners. Thus, Ancona says, unlike *Oak Park* this case involved *two* accidents. First, Williams inadvertently left his notebook lying open. Second, Williams "accidentally" assumed that Ancona would not suffer emotional distress upon discovering that he was having unprotected sex with other partners. This abstract distinction, however, does nothing to alter the purposeful nature of Williams' liability-producing conduct or bring this case outside the persuasive sway of *Oak Park*.

Williams engaged in covert unprotected sex with multiple partners, thereby putting Ancona at risk of contracting HIV, producing her emotional distress, and giving rise to her NIED claim. Williams' failure to stow his notebook simply was not the conduct "for which liability [was] imposed." *Delgado*, 47 Cal. 4th at 311. If Ancona's theory of this case were accepted, any purposeful conduct might mutate into an "accident" through the intervention of some inconsequential inadvertence. She has made no showing that California law mandates such incongruous results. Because no covered "occurrence" took place, it is unnecessary to address Travelers' claims that certain policy exclusions independently preclude indemnification for Williams' acts.

B.   Duty to Defend

Ancona argues that even if her injuries were not covered by the policy, Travelers nevertheless had a duty to defend Williams in the underlying litigation. An insurer must defend against any suit "which *potentially* seeks damages within the coverage of the policy." *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) (emphasis in original; citations and quotation marks omitted). "The duty to defend is determined by reference to the policy, the complaint, and *all* facts known to the insurer from any source" at the time defense is tendered. *Id.* at 300. If these facts create no potential for coverage, "there is no duty to defend." *Uhrich v. State Farm Fire & Cas. Co.*, 109 Cal. App. 4th 598, 608 (2003) (internal citations and quotation marks omitted).

Williams first tendered defense to Travelers upon being served with Ancona's initial complaint, which averred a litany of fraudulent sexual misconduct and obfuscation on the part of Williams but did not include the fear of HIV claim at issue here. Because Ancona concedes that her damages related to Williams' transmission of HPV and herpes are indisputably barred by the policy's "communicable disease" exclusion, the initial complaint did not give rise to any potential for coverage.

After Ancona served him with the FAC, Williams again tendered defense to Travelers and the insurer again refused to defend against Ancona's suit. Like the initial complaint, the FAC alleged that Williams had intentionally and surreptitiously engaged in unprotected sex with multiple partners. In addition to negligence, the FAC raised claims for sexual battery, fraud, and intentional infliction of emotional distress. In its sixth and final cause of action for NIED, the FAC averred that it was "foreseeable" Williams' indiscriminate sexual behavior would cause Ancona serious emotional distress. Ancona's NIED claim, as pled in the FAC, was based on her "severe emotional distress due to the contraction of HSV and HPV" and "also due to the fear" that Williams had exposed her to additional diseases.

While Ancona's discovery of Williams' notebook did not transform his intentional acts into an occurrence covered by the policy, in any event, no allegations regarding the "accidental" discovery were included in the initial complaint or the FAC. Ancona nonetheless contends that Travelers had a duty to defend because it "could not rule out the possibility" that there might have been some lurking, unmentioned "accident" sufficient to bring Williams' intentional conduct within the policy's coverage. To the contrary, the purposeful chain of conduct pled in support of the FAC's NIED claim was dispositive proof that there was no potential for coverage. *See Uhrich*, 109 Cal. App. 4th at 610 (where insured's alleged conduct was "necessarily nonaccidental, not because any harm was intended, but simply because the conduct could not be engaged in by accident," no duty to defend existed) (internal quotation marks omitted). Even if Travelers had

known of the "accidental" discovery of the notebook, this fact would not, as a matter of law, have given rise to any potential for coverage.[7]

C.     Affirmative Defenses

Finally, Ancona contends that judgment on the pleadings is precluded by her eighth affirmative defense. That defense reads, in its entirety: "Ms. Ancona alleges that any provision of the homeowners' policy at issue in this case, which Travelers seeks to rely upon in support of any claim, is impermissibly vague and/or ambiguous such as would render it unenforceable." The term "accident," however, has a firmly established definition under California insurance law which "becomes part of the policy and precludes any assertion that the term is ambiguous." *Delgado*, 47 Cal. 4th at 308. In her answer, Ancona admits that the policy defines a covered occurrence, in relevant part, as an "accident." This concession is sufficient to foreclose Ancona's conclusory ambiguity defense, in which she makes no attempt to explain why the settled definition of "accident" under California law should not apply in these proceedings.[8] Nor do any of Ancona's remaining threadbare affirmative defenses preclude judgment on the pleadings. *Westport Ins. Corp. v. Northern Cal. Relief*, --F.Supp.3d--, 2014 WL 7185480, at *9 (N.D. Cal. Dec. 16, 2014) (judgment on the pleadings may be granted when a defendant's affirmative defenses do not "contain sufficient factual matter to state a defense that is plausible on its face"). Because she has failed to articulate any rationale why additional allegations would forestall judgment as a matter of law in favor of Travelers, Ancona's request for leave to amend her affirmative defenses is denied. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

---

[7] As a result, Ancona's request for discovery aimed at determining whether Travelers had access, at the time of tender, to extrinsic facts regarding the "accidental" discovery of the notebook is denied. For the same reasons, Williams' counterclaim that Travelers conducted an "inadequate investigation" of the FAC has no merit.

[8] At oral argument, Ancona raised, for the first time, an inchoate argument regarding purported inconsistencies in the language of Williams' policy. Her argument was both untimely and unpersuasive. As discussed above, Ancona concedes in her answer that Williams' policy defines a covered occurrence as an "accident." She has not stated any cogent reason, either in her moving papers or at oral argument, why this unambiguous term has been rendered ambiguous here.

## V. CONCLUSION

For the foregoing reasons, Travelers had no duty, as a matter of law, to defend or indemnify Williams in connection with the underlying litigation. As a result, judgment on the pleadings will be entered in favor of Travelers. Ancona's counterclaims, which stem from allegations that Travelers improperly declined to defend and indemnify Williams in connection with the underlying action, are hereby dismissed.

**IT IS SO ORDERED**.

Dated: April 6, 2015

_____
RICHARD SEEBORG
United States District Judge